UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 3:12-CR-0058-LRH-WGC |
| v. | ORDER |
| F. HARVEY WHITTEMORE | |
| Defendant. | |

Before the court are defendant F. Harvey Whittemore's ("Whittemore") post-trial motions in arrest of judgment and to dismiss Counts 1 through 3 of the Indictment (Doc. #178[1]), and for a new trial (Doc. #179). The United States filed oppositions (Doc. ##185, 186) to which Whittemore replied (Doc. ##191, 192).

Also before the court is the United States' motion to dismiss Count 4 of the Indictment without prejudice. Doc. #181. Whittemore filed an opposition (Doc. #184) to which the United States replied (Doc. #187).

**I.  Facts and Background**

In 2007, defendant Whittemore allegedly promised to raise $150,000 in campaign contributions for United States Senator Harry Reid's re-election campaign for the United States

---

[1] Refers to the court's docket number.

Senate. To make good on his promise, and within a period over several days, Whittemore allegedly personally funded over $133,000 through twenty-nine employees of his real estate development company, various family members, and their respective spouses as conduit donors to the Senator's campaign in order to bypass the individual campaign contribution limits on Whittemore under federal law. Whittemore, his wife and his sister also contributed their personal maximum contributions of $4,600 each ($13,800) at the same time. He then allegedly transferred the combined contributions to the Senator's campaign committee.

In keeping with federal law, the campaign committee filed a required contribution report with the Federal Election Commission ("FEC") on April 15, 2007. This report allegedly contained false information identifying Whittemore's employees, family members, and their respective spouses, rather than Whittemore himself, as the source of the campaign funds.

On June 6, 2012, the Grand Jury returned a four (4) count Indictment against defendant Whittemore charging him with: (1) making excessive campaign contributions in violation of 2 U.S.C. § 441a(a)(1) ("Count 1"); (2) making contributions in the name of another in violation of 2 U.S.C. § 441f ("Count 2"); (3) false statement to a federal agency in violation of 18 U.S.C. § 1001(a)(2) ("Count 3"); and (4) false statement to a federal agency in violation of 18 U.S.C. § 1001(a)(2) ("Count 4"). Doc. #1.

On May, 29, 2013, after a two-week jury trial, the jury convicted Whittemore of Counts 1 through 3 of the Indictment. Doc. #163. However, the jury deadlocked on Count 4. *Id*. Subsequently, the court declared a mistrial on Count 4. *Id*. Thereafter, the parties filed the present post-trial motions. Doc. ##178, 179, 181.

**II.    Motion in Arrest of Judgment and to Dismiss Counts 1 through 3 (Doc. #178)**

In his motion, Whittemore argues that judgment should be arrested because Counts 1 through 3 of the Indictment either fail to charge criminal offenses, or to invoke the court's jurisdiction. Specifically, Whittemore raises three arguments for arrest of judgment: (1) that Section 441f of Title 2, United States Code, does not criminalize the conduct alleged in the

2

indictment; (2) Sections 441a and 441f are unconstitutional on their face; and (3) Sections 441a and 441f are unconstitutional as applied in this action. *See* Doc. #178. The court shall address each argument below.

**A. Legal Standard**

Pursuant to Federal Rule of Criminal Procedure 34, a defendant may move to arrest judgment on a criminal conviction. FED. R. CRIM. P. 34. Under Rule 34, "the court must arrest judgment if: (1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." FED. R. CRIM. P. 34(a). A defendant must move to arrest judgment within fourteen (14) days after the court accepts a guilty verdict. FED. R. CRIM. P. 34(b).

In reviewing a motion to arrest judgment under Rule 34(a), the court may review the entire "face of the record." *United States v. Sisson*, 399 U.S. 267, 282 (1970). However, the "face of the record" is limited solely to an indictment, a plea, the verdict, and the ultimate sentence. *Id*. The court does not review the evidence adduced at trial in ruling on a Rule 34(a) motion to arrest judgment. *Id*.

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), a defendant may bring a motion challenging the sufficiency of the indictment at any time while the case is pending. FED. R. CRIM. P. 12(b)(3)(B). An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). An indictment is sufficiently pled if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend . . . ." *United States v. Lazarenko*, 546 F.3d 593, 599 (9th Cir. 2008). The failure of an indictment to recite an essential element of a charged offense is a "fatal flaw requiring dismissal of the indictment." *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999).

In reviewing a motion to dismiss an indictment under Rule 12(b)(3)(B), the court must accept the facts alleged in the indictment as true. *Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1954).

**B. Sufficiency of the Indictment**

Section 441f provides that "[n]o person shall make a contribution [to a candidate for federal office] in the name of another person or knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person." 2 U.S.C. §441f.

In his motion, Whittemore argues that Section 441f does not criminalize the conduct alleged in the Indictment and, therefore, the Indictment fails to charge him with an offense. Specifically, Whittemore argues that Section 441f only criminalizes conduit schemes where the defendant "earmarked" or otherwise "directed" the diversion of his own money to the candidate. *See* Doc. #178. Because the Indictment does not allege anywhere that he "earmarked or otherwise directed" his own funds to the candidates through the alleged conduit donors, Whittemore contends that the Indictment is insufficient to charge a violation of Section 441f.

The court has reviewed the documents and pleadings on file in this matter and finds that the language in the Indictment was sufficient to charge Whittemore with a violation of Section 441f. In contrast with Whittemore's contention, there is no legal requirement that in addition to alleging the essential element of intent, an indictment must also contain factual allegations to establish that the defendant's conduct meets a particular definition of that element. Rather, an indictment must simply contain a plain and concise statement identifying the essential facts constituting the offense charged. *See* FED. R. CRIM. P. 7(c)(1). This liberal pleading standard is satisfied where an indictment sets forth the charged offense using the words of the criminal statute itself. *See e.g., United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) ("In cases where the indictment tracks the words of the statute charging the offense, the indictment will be held sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense.").

Here, the allegations in the Indictment track the statutory language of the alleged crimes and state all essential facts related to the charged offenses including sufficient factual detail to place Whittemore on notice of the charged offenses. Although the Indictment did not use the specific

words "earmarked or otherwise directed" in its allegations, the Indictment did specifically allege that Whittemore made unlawfully excessive indirect financial contributions to the Senator's re-election campaign through alleged intermediaries or "conduits" in violation of 2 U.S.C. Sections 441a and 441f. In particular, the Indictment alleged that Whittemore "devised a scheme and plan whereby he used family members, employees of [his company], and their respective spouses as prohibited conduits through which to funnel his own money to [the campaign] under the guise of lawful contributions." Doc. #1, ¶13. Further, the Indictment alleged that Whittemore "directly and indirectly solicited [his employees] and their spouses to make the maximum allowable federal campaign contributions . . . knowing that his personal money would be used to advance funds to or reimburse these individuals" and "gave his own money to adult members of his family and their respective spouses, with the intent and purpose that this money would be used to make the maximum allowable contribution to [the campaign] under the name of the family member or spouse." Doc. #1, ¶17-18. Therefore, the court finds that these allegations were sufficient to plead a violation of Section 441f.

### C. Unconstitutionality of Sections 441a and 441f

Whittemore's second argument for arrest of judgment is that 2 U.S.C. Sections 441a and 441f are unconstitutional, and therefore, the related charges, Counts 1 through 3, should be dismissed. *See* Doc. #178. This motion is nearly identical to Whittemore's pre-trial motion challenging the constitutionality of Sections 441a and 441f. *See* Doc. #77.

As addressed at length in the court's prior order denying Whittemore's identical pre-trial motion (Doc. #135), Whittemore's motion is without merit. Whittemore's constitutional challenge of 2 U.S.C. Sections 441a and 441f is foreclosed by the United States Supreme Court's decision in *Buckley v. Valeo*, 424 U.S. 1 (1976), which upheld the constitutionality of these and related campaign finance statutes. Thus, under controlling precedent, the underlying charges in the indictment are constitutional.

///

Further, Whittemore's motion is based on his speculation that the United States Supreme Court may overhaul its campaign finance jurisprudence sometime in the future because the Supreme Court has decided to review a three-judge memorandum opinion in *McCutcheon v. Federal Election Commission*, 2012 WL 4466482 (D.D.C. 2012), an unrelated action from the District of Columbia. His argument minimizes existing and controlling precedent in favor of prognosticating about the outcome of an undecided Supreme Court case concerning a statutory provision that is not at issue here and extrapolating that future decision to this action. This court's obligation is to follow existing precedent. Moreover, the court is acutely cognizant of the perils inherent in hypothesizing about the outcome of undecided cases. Accordingly, the court shall deny Whittemore's motion as to this challenge.

**D. Unconstitutionality of Sections 441a and 441f as applied in this action**

In his last argument for arrest of judgment, Whittemore contends that as applied in this case, Title 2, United States Code, Sections 441a and 441f are unconstitutional and fail to invoke the jurisdiction of this court. *See* Doc. #178. Specifically, Whittemore argues that the evidence adduced at trial shows that, in each and every instance, the family members and employees who made the campaign contributions had been given unconditional gifts of money. Thus, Whittemore contends that the evidence at trial showed that none of the contributions at issue were comprised of "his own money" as alleged in the Indictment.

Whittemore's as applied challenge is without merit. First, Whittemore's motion seeks to review evidence, which is improper under Rule 34. *United States v. Sisson*, 399 U.S. at 282. Second, Whittemore's self-serving interpretations and references to the evidence and the trial record are contradicted by the empaneled jury's factual findings. Therefore, the court shall deny his motion as to this issue.

**III. Motion for a New Trial (Doc. #179)**

Under Rule 33 of the Federal Rules of Criminal Procedure, a district court may grant a new trial to a criminal defendant "if the interest of justice so requires." FED. R. CRIM. P. 33(a). A district

court's power to grant a motion for a new trial is broader than its power to grant a motion for acquittal. *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992). However, a district court "should exercise its discretion to grant a new trial sparingly." *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003).

In his motion, Whittemore argues that a new trial is warranted for four reasons: (1) the court declined to excuse a biased juror; (2) the court's jury instructions were incomplete and erroneous; (3) the Government made prejudicial statements during closing arguments; and (4) the verdict is unsupported by the weight of the evidence. *See* Doc. #179. The court shall address each argument below.

**A. Biased Juror**

During Whittemore's trial, it was reported that a prejudicial comment was made by one of the jurors following the Government's case in chief. On May, 23, 2013, the court, outside the presence of the jury, informed the parties that the court clerk had been told that a juror, while retiring to the jury room the prior day, was overheard as commenting: "now, we have to listen to the defendant's bullshit." Doc. #179, Exhibit 9, May 23, 2013, Unofficial Transcript, p.4.

To preserve the integrity of the jury and determine the veracity of the accusation, the court, at sidebar and in the presence of counsel and defendant Whittemore, individually canvassed all jurors beginning with Juror No. 9 - the juror initially identified as having made the prejudicial comment. Juror No. 9 denied using the term "bullshit," but admitted that he may have said something like "now we are going to listen to the other side" at the close of the Government's case. Doc. #179, Exhibit 9, May 23, 2013, Unofficial Transcript, p.12. Juror No. 1, however, confirmed hearing the comment, including the term "bullshit," and identified Juror No. 9 as the speaker. Doc. #179, Exhibit 9, May 23, 2013, Unofficial Transcript, p.15-16. The only other juror who stated possibly hearing the comment was Alternate Juror No. 1, but Alternate Juror No. 1 could not remember exactly what was said or who made the comment. Rather, Alternate Juror No. 1 remembered hearing some comment from the area where both Juror No. 9 and Juror No. 10 were

seated. The court then described both Juror No. 9 and Juror No. 10, and after some equivocation, Alternate Juror No. 1 identified Juror No. 10 as the person who possibly made the comment.

After completing its canvas, the court made several findings on the record. First, the court found that the comment "now, we have to listen to the defendant's bullshit" was likely to have been said in the presence of other jurors following the close of the Government's case. Doc. #179, Exhibit 9, May 23, 2013, Unofficial Transcript, p.38. Second, the court reflected that both Juror No. 9 and Juror No. 10 had been identified in some capacity as the speaker of the comment, though both jurors denied making such a statement. *Id*. Then, based on the court's observations and the jurors' statements, the court dismissed Juror No. 9, finding that Juror No. 9 was the likely speaker of the comment and that Juror No. 10 was not the speaker. *Id*. The court declined to dismiss Juror No. 10. Eventually, Juror No. 10 was elected foreperson of the jury.

In his motion for a new trial, Whittemore argues that the court's decision to keep Juror No. 10 on the jury panel was an abuse of the court's discretion. Because Juror No. 10 was also identified as making the prejudicial comment, Whittemore contends that Juror No. 10 should have also been dismissed to eliminate all possible bias and prejudice from the jury panel. Further, Whittemore argues that Juror No. 10 was observed by the defense team to be sleeping during the trial. Although he cannot identify any testimony missed by Juror No. 10, Whittemore contends that this conduct, when combined with Juror No. 10's identification as the speaker of the prejudicial comment and the fact that Juror No. 10 was ultimately elected as jury foreperson, demonstrates that he was deprived of a fair trial. The court disagrees.

Federal Rule of Criminal Procedure 24 permits the court to empanel alternate jurors "to replace any jurors who are unable to perform or who are disqualified from performing their duties." FED. R. CRIM. P. 24(c)(1). The district court has discretion in determining whether to replace a juror with an alternate. *United States v. Alexander*, 48 F.3d 1477, 1485 (9th Cir. 1995). The district court's exercise of discretion will not be disturbed absent a showing of prejudice to the defendant. *United States v. Trigg*, 988 F.2d 1008, 1011 (9th Cir. 1993). Further, on a motion for new trial, the

alleged juror misconduct must have "prejudiced the defendant to the extent that he has not received a fair trial." *United States v. Sears*, 663 F.2d 896, 900 (9th Cir. 1981).

Here, the court undertook a painstaking canvass of all jurors to determine what exactly was said and which juror, if any, made the comment. At the end of that lengthy process, the court excused Juror No. 9 based on the clear recollection and positive identification by Juror No. 1 of Juror No. 9 ("the man wearing the red hat") and the admission by Juror No. 9 that he may have made a similar statement that did not include the word "bullshit." *See* Doc. #179, Exhibit 9, May 23, 2013, Unofficial Transcript, p.45. Other than Juror No. 1, only Alternate Juror No. 1 stated possibly hearing the comment, but Alternate Juror No. 1 could not recall exactly what was said or who made the comment. Further, Whittemore discounts the court's finding crediting Juror No. 10's honesty and candor during canvassing. Doc. #179, Exhibit 9, May 23, 2013, Unofficial Transcript, p.45 ("I further would add that I was personally impressed with Juror No. 10's response. I felt that his was an honest, straightforward response that he is not the person who made the statement. And I'm making that finding."). Moreover, during the canvas, Juror No. 10 confirmed his ability to continue to serve as a fair and impartial juror and consider the case purely on the evidence presented. May 23, 2013, Unofficial Transcript, p. 26.

Finally, notwithstanding defense counsel's declaration that the defense team observed Juror No. 10 sleeping during trial, neither government counsel, nor the court, nor court staff observed Juror No. 10, or any juror for that matter, sleeping during the trial. Further, prior to the canvass of jurors concerning the nature of the reported comment made at the conclusion of the Government's case, Whittemore posed no objection to Juror No. 10 based on Juror No. 10's alleged sleeping during the trial. Thus, based on the record before the court, the court finds that there has been no showing that Juror No. 10 was biased against Whittemore or that Juror No. 10's presence on the panel prejudiced his defense. The court finds that it was not an abuse of discretion to keep Juror No. 10 on the jury panel.

///

9

### B. Incomplete and Erroneous Jury Instructions

Whittemore's second argument for a new trial is that the jury instructions were incomplete and erroneous. Whittemore raises three challenges to the court's jury instructions: (1) the final instructions were improper statements of the law concerning conduit donors; (2) the court erred in failing to give Whittemore's proposed instructions on his theory of defense; and (3) that Instruction 22 was inherently prejudicial. *See* Doc. #179.

#### 1. Final Instructions

Whittemore argues that the final jury instructions misstated the law and directed the jury to enter a legally and factually unsupportable verdict. Specifically, Whittemore contends that *United States v. O'Donnell*, 608 F.3d 546 (9th Cir. 2010), only criminalizes conduit schemes where the individuals involved are "merely 'straw donors.'" *Id*. at 548. In particular, Whittemore argues that for a Section 441f violation to occur, the defendant must have "earmarked" or otherwise "directed" the diversion of his own money to the candidate's campaign, thereby exercising continuing dominion and control over the money's disposition.

Whittemore's position is that an unconditional gift inter vivos - which he argues occurred in this matter - makes it impossible for the giftor to have actually "made" a campaign contribution because the giftee has complete discretion and control over what to do with the money, including making a voluntary campaign contribution. As such, Whittemore argues that a Section 441f violation cannot occur if the defendant did not arrange for the intermediary to deliver money to a campaign or promise to reimburse the intermediary for a donation. Whittemore contends that the jury instructions improperly stated the law by permitting the jury to convict him without a finding that the money belonged to Whittemore at the time it was donated. Thus, because the jury instructions did not require the Government to prove the money donated actually belonged to Whittemore, Whittemore argues that they were prejudicial and inaccurate statements of the law.

Initially, the court finds that Whittemore misinterprets *O'Donnell*'s primary holding which states that: "[Section] 441f prohibits straw donor contributions, in which a defendant solicits others

to donate to a candidate for federal office in their own names and furnishes the money for the gift either through an advance or a prearranged reimbursement." *O'Donnell*, 608 F.3d at 556. Whittemore offers only a single, erroneous legal proposition; that a defendant cannot be guilty of 441f unless he "owned" the funds used for the contribution at the time of the contribution. Whittemore's interpretation is inconsistent with *O'Donnell*'s direct holding that an advance or reimbursement "gift" of funds used to solicit campaign contributions is a violation of 441f, and his interpretation would also virtually decriminalize conduct prohibited by 441f. When a defendant provides money to a conduit so that the conduit can make a contribution in his or her own name, the conduit must necessarily initiate payment from his own account. Thus, under Whittemore's interpretation, the owner of the funds at the time of the contribution would always be the conduit even though the source of the funds was the defendant. A simple reading of *O'Donnell* makes clear that this interpretation is without merit. Therefore, the court finds that the jury instructions were accurate statements of the law concerning conduit campaign contributions.

### 2. **Whittemore's Proposed Instructions**

Generally, a criminal defendant is entitled to a jury instruction on his theory of defense if such instruction is supported by the law and has foundation in the evidence. *United States v, Duran*, 59 F.3d 938, 941 (9th Cir. 1995).

In his motion, Whittemore also argues that the court erred in failing to give his proposed instructions regarding his defense theory that a gift inter vivos does not constitute advancement or reimbursement of funds for purposes of Sections 441a and 441f. *See* Doc. #132. The court disagrees.

In determining the final instructions, the court reviewed Whittemore's proposed instructions and found that they were misstatements of the law concerning conduit campaign contributions and were confusing. The court rejected Whittemore's proposed instructions because they were rooted in the misreading of *O'Donnell* addressed above. The instructions given by the court, in contrast, followed *O'Donnell*. It was not error to reject Whittemore's proposed instructions.

### 3. Instruction 22

Whittemore's final argument that the court's jury instructions were inaccurate focuses on Instruction 22. Instruction 22 defined contribution as follows:

> A contribution is any gift, subscription, loan, advance, or deposit of money or anything of value made by a person for the purpose of influencing any election for federal office.
> In addition, the law regards any contribution made by the defendant, either directly or indirectly, on behalf of a particular candidate, including contributions which are in any way earmarked or otherwise directed through an intermediary or conduit to such candidate, as contributions from the defendant to such candidate.

Doc. #165, Instruction 22.

Whittemore argues that Instruction 22 misstates the law and allowed the jury to convict him of purely lawful conduct, namely, making gifts inter vivos of money to third parties. Specifically, Whittemore contends that the language of Instruction 22 defines gifts and advances to individuals as "contributions" regardless of whether such money was ever used to make an actual payment of money to a political campaign. Thus, Whittemore argues that Instruction 22 impermissibly permitted the jury to convict him of making lawful gifts to third parties without proving that the same money was ultimately transferred to a candidate or a candidate's campaign committee.

Initially, the court notes that the first paragraph of Instruction 22 is a verbatim recitation of 2 U.S.C. § 431(8)(A) which defines the term "contribution" as it is used throughout Title 2. As such, it is the appropriate definition of contribution relative to violations of federal campaign finance laws. The *O'Donnell* court cited the same definition in reaching its conclusion that conduit contributions fell within the scope of Section 441f. *See O'Donnell*, 608 F.3d at 550.

Further, in the context of federal campaign finance law, it is clear that the recipient of the contribution must be the candidate or the candidate's political campaign. Section 441a sets forth the federal limits on campaign contributions. 2 U.S.C. §441a. That section makes clear that a contribution must be made "to a candidate and his authorized political committees." Even the instruction itself discusses money used for the "purpose of influencing any election for federal office" and "any contribution . . . on behalf of a particular candidate." Doc. #165, Instruction 22.

Thus, Instruction 22 necessarily requires the money to be donated to a candidate or his authorized political committee.

Finally, Whittemore's challenge to Instruction 22 takes the instruction out of the context of the other jury instructions and seeks to place it in a vacuum. The court gave Instructions 17, 18, 20, 21 and 22 that set forth the law regarding the charged contribution offenses (Counts 1 and 2 of the Indictment). Instructions 15, 16 and 19 set forth the Indictment and detail the specifics of Whittemore's charged conduct relative to these offenses. *See* Doc. #165, Instructions 15, 16, 17, 18, 19, 20, 21 and 22. These eight instructions, taken as a whole, provide context for Instruction 22. In particular, Instructions 17 and 18 - which identify and define the excessive contribution offense (Count 1) - repeatedly reference the proscription against "contributions [which are excessive] to candidates for federal office" while Instructions 20, 21 and 22 identify and define the conduit contribution offense (Count 2). These Instructions, 20 through 22, establish that excessive contributions cannot be made in the name of a contributor who was not the true source of the money when the money was furnished through an advance or a prearranged reimbursement. Whittemore's argument requires the court to assume that the jury would not consider or understand the instructions in their entirety. This is nonsensical and would also require the jury to completely disregard Instruction 1 which states in pertinent part: "[i]n following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important." Doc. #165, Instruction 1. Accordingly, the court shall deny Whittemore's motion as to this issue.

**C. Prosecutorial Misconduct**

Whittemore's third argument for a new trial alleges that during closing arguments, the Government committed prosecutorial misconduct by making several factual statements unsupported by the evidence. Whittemore identifies two allegedly improper statements made by the Government. The first statement is: "Don't forget [Mr. Whittemore is] sitting on 30,000 acres of property down in southern Nevada. Gee, you think maybe there might be a time when he needs some help with that, maybe something with the EPA or the Fish and Wildlife service, or some

13

regulatory agency. It would be nice to get a call back from the Senator's office." Doc. #179, Exhibit 4, May 28, 2013 Unofficial Transcript, p.99. Whittemore argues that this statement suggested that he acted upon criminal motive in his desire to support Senator Reid's re-election campaign despite investigative reports in the Government's possession that Senator Reid was not improperly involved with Whittemore's land development projects in 2008. Whittemore contends that the statement in the Government's rebuttal argument likely created the false impression in the minds of the jury that there was some corruption or quid pro quo in the process and prejudiced his defense.

The second identified statement is: "Oh, we had Sue Lowden. She would have testified it's no big deal, no big deal that we've got these two lists [identifying named contributors]. I can look at this and I can see that related to Harvey is related to - you know - no big deal?" Doc. #179, Exhibit 4, May 28, 2013 Unofficial Transcript, p.100. Whittemore argues that it was prejudicial error for the Government to argue what Lowden "would have testified" because the defense was precluded from asking Lowden specific questions about the FEC reports. Further, the Government does not and cannot know to what Lowden "would have testified" absent the Government's objection to her testimony.

A prosecutor may not "make statements in closing argument unsupported by the evidence, [] misstate admitted evidence, or [] misquote a witness' testimony." *United States v. Watson*, 171 F.3d 695, 699 (D.C. Cir. 1999). "A misstatement of evidence is error when it amounts to a statement of fact to the jury not supported by proper evidence introduced during trial, regardless of whether counsel's remarks were deliberate or made in good faith." *Id.* at 700. To determine whether a prosecutor's misconduct warrants a new trial, courts consider several factors including: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct and remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong. *United States v. Warshak*, 631 F.3d 266, 302 (6th Cir. 2010); *United States v. Ayala-*

14

*Garcia*, 574 F.3d 5, 19 (1st Cir. 2009). Further, a defendant must show that it is "more probable than not that the misconduct materially affected the verdict." *United States v. Peterson*, 140 F.3d 819, 821 (9th Cir. 1998).

Here, the court finds that these two statements from the Government's rebuttal summation do not amount to prejudicial misconduct. First, these were two isolated statements made during the Government's approximately ninety minutes of main and rebuttal summations. Second, not only had the court instructed the jury that the parties' closing arguments were not evidence, but Whittemore failed to object to either comment at the time they were made. Further, the court finds that the statements did not tend to mislead the jury.

In particular, the first challenged statement was an invited response to Whittemore's closing argument in which his counsel claimed that Whittemore's sole motive for wanting to keep his contribution promise to Senator Reid was the Whittemore Peterson Institute. In response, the Government highlighted a different motive, that supporting Senator Reid would be good for Whittemore's business interest in his pending 30,000 acre development in Southern Nevada. Nothing about the Government's comment was contrary to the court's pre-trial rulings. The Government did not mention a prior investigation of Whittemore's relationship with Senator Reid. Nor did the Government claim that, in fact, Whittemore had sought any improper assistance on his land dealings. Rather, the Government simply argued that access to Senator Reid, whose office might be supportive relative to regulatory matters concerning the planned development, was an equally plausible motive for Whittemore to commit the charged offenses. This was a permissible comment on the evidence and argument presented at trial.

The second challenged comment was immaterial to the charges before the jury because it referred at most to the transparency of the relationships to Whittemore of some of the reported campaign contributors, an issue not in dispute at the trial and not material to the charges against Whittemore. Therefore, the court finds that the unobjected to prosecutorial comments do not warrant a new trial and the court shall deny Whittemore's motion accordingly.

**D. Insufficient Evidence**

Whittemore lastly argues that a new trial should be granted because the verdict was not supported by the evidence. Specifically, Whittemore argues that the evidence adduced at trial demonstrated that the money contributed to the re-election campaign actually belonged to the individual contributors making the contributions and that these individuals were not conduits, but were making contributions in their own names and with their own money. As such, Whittemore argues the verdict is contrary to the evidence.

The Ninth Circuit has recognized that a new trial is warranted if the jury's verdict is not supported by the weight of the evidence. *See United States v. Fendi North America*, 479 F.3d 1006 (9th Cir. 2007); *see also, Landes Contsr. Co., Inc. v. Royal Bank of Canada*, 883 F.2d 1365, 1371-72 (9th Cir. 1987) (holding that a court may grant a new trial "[i]f, giving full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). In reviewing a motion for a new trial the district court need not view the evidence in the light most favorable to the verdict and may weigh the evidence and evaluate the credibility of the witnesses for itself. *Alston*, 974 F.2d at 1210. Motions for a new trial "should be granted 'only in exceptional cases in which the evidence preponderates heavily against the verdict.'" *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).

The court has carefully reviewed the trial evidence and finds that Whittemore's argument for a new trial is without merit. Whittemore once again views the evidence through a misguided and unsupported formulation of the law and with a self-serving interpretation of the evidence. In his review of the evidence, Whittemore completely ignores the undisputed testimony of the trial witnesses that: (1) Whittemore was the source of over $133,000 in cash that was contributed to the Senator's campaign in the names of twenty-nine contributors, all of whom were either employees of Whittemore's company, family members or their respective spouses; (2) most named contributors had no intention of contributing to the campaign before they received the money from Whittemore; (3) all the contributions were made shortly after solicitation and funding from

16

Whittemore, most of them within one day; (4) most of the individuals and their spouses would not have made any contribution without the money provided by Whittemore; (5) all the individuals contributed the maximum legal contribution of $4,600.00; (6) Whittemore paid most of the named contributors an additional $400.00 each ($800.00 per couple) over and above their contribution amounts; and (7) none of those who were solicited and funded by Whittemore refused to contribute the money that he had provided. This evidence supports the Government's contention that this was a well-orchestrated scheme concocted in response to Whittemore's last minute rush to satisfy his $150,000 personal pledge to the Senator of campaign support by the promised deadline. Further, the evidence clearly supports a finding that Whittemore solicited his family, employees, and their respective spouses to donate to the Senator's campaign in their own names and that he personally funded the money for their contributions either through an advance or a prearranged reimbursement. Finally, the evidence supports the jury's finding that Whittemore knew that what he was doing was against the law. The trial evidence in this action clearly and strongly supports the jury's verdict. Accordingly, the court shall deny Whittemore's motion for a new trial.

**IV.      Motion to Dismiss Count 4 (Doc. #181)**

Pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure the government may, with leave of court, dismiss a criminal indictment against a defendant. FED. R. CRIM. P. 48(a). This authority extends to seeking dismissal of only a single count in an indictment. *See In Re United States*, 345 F.3d 450, 452 (7th Cir. 2003). Customarily, Rule 48(a) dismissals are without prejudice and the government is permitted to re-indict the defendant with the dismissed charge within the normal statute of limitations period. *United States v. Raineri*, 42 F.3d 36, 43 (1st Cir. 1994).

In his opposition, Whittemore does not contest the Government's authority to dismiss Count 4 of the indictment. Rather, Whittemore argues that any dismissal should be with prejudice. Whittemore bases his argument on the Speedy Trial Act, found at 18 U.S.C. § 3161. In particular, Whittemore argues that the act's provision requiring the Government to re-try a criminal defendant within seventy (70) days of a mistrial necessarily precludes the Government from re-indicting a

criminal defendant on any dismissed charges. The court disagrees.

The Government's authority to seek dismissal under Rule 48(a) and re-indict at a later time is not limited by the Speedy Trial Act as the act expressly excludes the time between the Government's dismissal of a charge and its re-indictment from the time in which the Government must re-try a criminal defendant. *See* 18 U.S.C. § 3161(h)(3)(B)(6). As such, Whittemore's argument that dismissal should be with prejudice is without merit. Accordingly, the court shall grant the Government's motion and dismiss Count 4 of the indictment without prejudice. However, this ruling shall also be without prejudice to any challenges Whittemore may have in the event of re-indictment upon Count 4 at a later time.

IT IS THEREFORE ORDERED that defendant's post-trial motion in arrest of judgment and to dismiss Counts 1 through 3 of the Indictment (Doc. #178) and motion for a new trial (Doc. #179) are DENIED.

IT IS FURTHER ORDERED that the Government's motion to dismiss Count 4 (Doc. #181) is GRANTED. Count 4 of the Indictment (Doc. #1) is DISMISSED without prejudice.

IT IS SO ORDERED.

DATED this 16th day of September, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE